FILED

2023 Jan-12  AM 08:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

RONALD MIGUEL WATSON,      )
                          )
     Plaintiff,           )
                          )
v.                        )      Case No. 5:21-cv-00186-KOB-JHE
                          )
OFFICER M. ALBRITTON,     )
                          )
     Defendant.          )

## REPORT AND RECOMMENDATION

Plaintiff Ronald Miguel Watson filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the Constitution or laws of the United States. (Doc. 1). He names former Correctional Officer Marshal Albritton as the sole defendant. (Doc. 1 at 1, 3). Watson seeks monetary relief. (Doc. 1 at 4). The complaint is before the undersigned for a preliminary report and recommendation. *See* 28 U.S.C. § 636(b)(1); *McCarthy v. Bronson*, 500 U.S. 136 (1991). For the reasons to follow, the undersigned recommends the court grant Albritton's motion for summary judgment and dismiss this action with prejudice.

## I.  Procedural History

On October 18, 2021, the undersigned entered an Order for Special Report directing the Clerk to forward a copy of the complaint to Albritton and ordering him to file a Special Report addressing Watson's factual allegations. (Doc. 9).

On May 19, 2022, Albritton filed a Special Report accompanied by affidavits and other evidence. (Doc. 20). On May 20, 2022, the undersigned construed the Special Report as a motion for summary judgment and notified Watson that he had 21 days to respond to the motion for summary judgment by filing affidavits or other evidence. (Doc. 21). The undersigned also advised

Watson of the consequences of any default or failure to comply with Rule 56.  (Doc. 21); *see Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985).  That deadline has passed without a response from Watson.

This matter is now before the court on Albritton's motion for summary judgment.

## II.  Standard of Review

Because the court has construed the defendant's Special Report as a motion for summary judgment, Federal Rule of Civil Procedure 56 governs the motion.  Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In making that assessment, the court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences against the moving party. *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).  The moving party has the initial burden of showing there are no genuine issues of material fact and he is due to prevail as a matter of law.  *See Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991).  The plaintiff has the ultimate burden of proving his claims, so the moving party will be entitled to judgment as a matter of law on any claim unless the plaintiff is able to show some evidence supporting each element of that claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532–33 (11th Cir. 1990).  As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case.  In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof.  This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532 (citations and internal quotations omitted).

In determining whether to grant summary judgment, however, the court will consider any "specific facts" pled in a *pro se* plaintiff's sworn complaint.  *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)).  Additionally, because the plaintiff is *pro se*, the court must construe the complaint more liberally than a pleading drafted by a lawyer.  *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).

### III.  Summary Judgment Facts[1]

On December 25, 2020, Albritton inadvertently sprayed pepper spray into Watson's cell while he slept.  (Doc. 1 at 3).  Watson contends that Albritton intended to spray an inmate housed

---

[1] Based on the foregoing summary judgment standard, the following facts are undisputed or, if disputed, taken in a light most favorable to the non-moving party.  Factual disputes are addressed in footnote form.

next to him. [2] [3]  (Doc. 1 at 3).  Watson requested decontamination and medical attention because

he could not breathe, but Albritton refused. [4]  (Doc. 1 at 3–4).

## IV.  Analysis

Watson alleges that on December 25, 2020, Albritton attempted to spray pepper spray on

an inmate housed next to him but sprayed Watson instead.  (Doc. 1 at 3).  Watson contends that

he could not breathe and asked Albritton to be decontaminated and for medical attention, but

Albritton refused.  (Doc. 1 at 3–4).  Liberally construing the complaint, Watson alleges Albritton

---

[2] Albritton states that he has no knowledge of this incident and denies Watson's allegations against him.  (Doc. 20-1, Albritton Decl. ¶ 6).

[3] William Mullison, an Administrative Support Assistant for the Alabama Department of Corrections ("ADOC"), contends that a search of the ADOC's Inmate Record Management System revealed no incident on or around December 25, 2020, involving Watson or the allegations described in the complaint.  (Doc. 20-2, Mullison Aff. at 1).  However, an Incident Report dated December 21, 2020, reflects that at approximately 12:40 p.m., Officers Barts and Donaldson escorted Inmate Andre Pearson back to Cell # 67, but Pearson refused to go back into the cell.  (Doc. 20-5 at 3).  Although Barts ordered Pearson to go into the cell, he continued to refuse.  (Doc. 20-5 at 3).  When Pearson resisted and began to pull away, Officer Barts administered a one second burst of Sabre Red to Pearson's facial area.  (Doc. 20-5 at 3).

Correctional Sergeant Brian Ray states that after the incident involving Pearson on December 21, 2020, he escorted Watson to the Health Care Unit due to "side contamination that Watson received from the incident in the cell next to him."  (Doc. 20-4, Ray Aff. at 1–2).  The body chart indicates that on December 21, 2020, at approximately 2:00 p.m., Ray requested that medical staff complete a body chart for Watson.  (Doc. 20-3 at 19).  According to the body chart, Watson informed medical staff that he "'got sprayed from the overflow of the next cell over.'"  (Doc. 20-3 at 19).  Medical staff noted that Watson's lungs were clear, and he had no injuries.  (Doc. 20-3 at 19).

Sergeant Ray contends that to the best of his knowledge, Albritton was not present at Limestone Correctional Facility when this incident occurred.  (Doc. 20-4, Ray Aff at 1).  The ADOC Post Assignment Duty Roster reflects that Albritton was on duty at Crestwood Hospital on December 21, 2020.  (Doc. 20-5 at 1–2).

[4] In an Inmate Request Slip dated January 8, 2021, Watson stated that he had a body chart on either "12/25/20 or 12/26/20 when the spray/mist from another inmate getting sprayed hit me."  (Doc. 20-3 at 17).  Medical staff responded that Watson's last body chart was on December 21, 2020.  (Doc. 20-3 at 17).

used excessive force against him and was deliberately indifferent to his serious medical needs. (Doc. 1 at 3–4).  As explained below, Albritton's motion for summary judgment is due to be granted.

### A.      Official Capacity Claims

Albritton is entitled to summary judgment to the extent Watson's claims are brought against him in his official capacity for monetary damages.  Not only does the Eleventh Amendment bar § 1983 claims against the state or an agency of the state, it also bars § 1983 claims for monetary damages brought against officials and employees of state entities sued in their official capacities. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984).   Accordingly, Albritton's motion for summary judgment is due to be granted on Watson's claims against him in his official capacity for damages.

### B.      Excessive Force & Medical Claims

Watson's excessive force allegations against Albritton must be analyzed under the standard set forth by the United States Supreme Court in *Hudson v. McMillian*, 503 U.S. 1 (1992) and *Whitley v. Albers*, 475 U.S. 312 (1986).  *See Campbell v. Sikes*, 169 F.3d 1353, 1374–75 (11th Cir. 1999).  In *Hudson v. McMillian*, the Supreme Court held that in assessing an inmate's excessive force claim, "the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7.  In extending *Whitley* to all cases involving allegations of the use of force by prison officials, the Supreme Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order.  Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates.  Both situations may require prison officials to act quickly and decisively.  Likewise, both implicate the principle that "'[p]rison administrators . . . should be accorded wide-ranging deference in the

adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"

*Hudson*, 503 U.S. at 6 (citations omitted).

With these concerns in mind, the Supreme Court set out certain factors that should be considered when examining whether a use of force was excessive. These factors include: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible official; (4) any efforts to temper the severity of a forceful response; and (5) the extent of the injury suffered by the inmate. *Whitley*, 475 U.S. at 321.

In applying the foregoing factors to the facts of a particular case, the Supreme Court has instructed:

That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind.'"

*Hudson*, 503 U.S. at 9–10 (citations omitted). Thus, to create a genuine issue of material fact, a plaintiff must present evidence from which a reasonable inference can be drawn that the defendant acted maliciously and sadistically.

Turning to Watson's medical claim against Albritton, the United States Supreme Court has held that it is only deliberate indifference to serious medical needs which is actionable under 42 U.S.C. § 1983. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A plaintiff must present evidence showing that he had a serious medical need, that the defendant acted with deliberate indifference in responding or failing to respond to that need, and that the defendant's wrongful actions caused an injury. *See Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). The conduct of prison officials must run counter to evolving standards of decency or involve the unnecessary and wanton

infliction of pain to be actionable under § 1983.  *See Bass v. Sullivan*, 550 F.2d 229, 230–31 (5th Cir. 1977).

An official also acts with deliberate indifference when he intentionally delays providing an inmate with access to medical treatment, knowing that the inmate has a life-threatening or urgent medical condition that would be exacerbated by delay.  *See Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187–88 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002); *see also Harris v. Coweta Cty.*, 21 F.3d 388, 394 (11th Cir. 1994).  Delay in access to medical treatment can violate the Eighth Amendment when it is "tantamount to unnecessary and wanton infliction of pain." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (quotation marks and citations omitted).  An inmate claiming an unconstitutional delay in medical treatment "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed."  *Hill*, 40 F.3d at 1188, *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002).

Viewing the facts in a light most favorable to Watson, Albritton's motion for summary judgment is due to be granted.  Watson alleges in his complaint that Albritton was not attempting to spray the chemical agent into his cell but did so inadvertently when he tried to spray the chemical agent on the inmate housed next to him.  (Doc. 1 at 3).  Thus, Watson fails to present evidence from which a reasonable inference can be drawn that Albritton acted maliciously and sadistically to cause him harm.  *Hudson*, 503 U.S. at 6–7.  At most, Albritton's actions may have been negligent; however, negligence does not rise to the level of a constitutional violation.  *Hernandez v. Florida Dep't of Corr.*, 281 F. App'x 862, 866 (11th Cir. 2008) ("Allegations of negligent conduct do not state a constitutional claim and thus, are not actionable under § 1983.").

Furthermore, Watson's assertion that he was denied medical treatment after the incident (doc. 1 at 3–4) is at odds with the medical record.  Specifically, Watson stated in his Inmate Request Slip that he "had a body chart either on 12/25/20 or 12/26/20 when the spray/mist from another inmate getting sprayed hit [him]."  (Doc. 20-3 at 17).  Therefore, Watson's allegation that he was refused medical treatment after the alleged incident on December 25, 2020, is wholly inconsistent with his medical request.  Accordingly, Albritton's motion for summary judgment is due to be granted on Watson's excessive force and deliberate indifference claims.[5]

## V. Recommendation

For these reasons, the undersigned **RECOMMENDS** Albritton's motion for summary

---

[5] Based on the undersigned's review of Watson's complaint, and the medical records, affidavits, and institutional records submitted by the defendant, the evidence clearly contradicts Watson's version of the facts to the extent he claims the incident took place on December 25, 2020, and that Albritton was responsible for spraying the chemical agent into his cell.  (Doc. 1 at 3–4; Doc. 20-2, Mullison Aff. at 1; Doc. 20-3 at 17, 19; Doc. 20-4, Ray Aff. at 1–2; Doc. 20-5 at 1–2).  Under such circumstances, the court is not obligated to accept the non-moving party's version of the facts.  *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." (quotation marks and citation omitted)); *Johnson v. Niehus*, 491 F. App'x 945, 951 (11th Cir. 2012) (explaining that a district court is not obliged to credit the non-movant's self-serving evidence "which is blatantly contradicted by the ... record ... [and] that no fair-minded jury could return a verdict for [the non-movant]"); *Vicks v. Knight*, 380 F. App'x 847, 852 (11th Cir. 2010) (finding that when resolving factual disputes in a summary judgment motion, a district court may ignore the plaintiff's version of the facts when it is clearly contradicted by other evidence of record, including affidavits, incident reports, and medical records).

The evidence indicates that the December 25, 2020 incident Watson alleges in his complaint actually took place on December 21, 2020, when Officer Barts sprayed Sabre Red on an inmate housed next to Watson and the spray contaminated Watson's cell.  (Doc. 20-4, Ray Aff. at 1–2; Doc. 20-5 at 3).  The evidence further demonstrates that Sergeant Ray took Watson to the Health Care Unit and requested that medical staff complete a body chart on him.  (Doc. 20-3 at 17, 19; Doc. 20-4 Ray Aff. at 1–2).  Institutional records reflect that Albritton was not at the prison when the incident occurred but was assigned to Crestwood Hospital that day.  (Doc. 20-5 at 1–2).  Regardless, Watson's claims are subject to dismissal even taking his allegations as true, as discussed herein.

judgment be **GRANTED** and this action be **DISMISSED WITH PREJUDICE**.

### VI.  Notice of Right to Object

Any party may file specific written objections to this report and recommendation.  Any objections must be filed with the Clerk of Court within **14 days.**  The objecting party must identify every objectionable finding of fact or recommendation and state the specific basis for every objection.  The objecting party also must identify every claim in the complaint that the report and recommendation has not addressed.  Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

A party who fails to object to factual or legal conclusions in the Magistrate Judge's report and recommendation waives the right to challenge on appeal those same conclusions adopted in the District Judge's order.  Without a proper objection, however, the court on appeal may review the unobjected-to factual and legal conclusions for plain error if necessary in the interests of justice.  11th Cir. R. 3-1.

After receiving the objections, a District Judge will conduct a *de novo* review of the relevant portions of the report and recommendation and may accept, reject, or modify in whole or in part the Magistrate Judge's findings of fact and recommendations.  The District Judge will conduct a hearing if required by law and may exercise discretion to conduct a hearing or otherwise receive additional evidence.  Otherwise, the District Judge may consider the record developed before the Magistrate Judge in making an independent determination of the relevant legal issues.  The District Judge also may refer this action back to the Magistrate Judge with instructions for further proceedings.

A party may not appeal the Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  A party may appeal only from a final judgment entered by a District Judge.

DONE this 11th day of January, 2023.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE